I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATE _October 15, 2009_

_Melissa Lash_

DEPUTY CLERK

FILED
CLERK, U.S. DISTRICT COURT

OCT 14 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAMOND JACKSON, | Case No. CV 09-06954 PSG (AN) |
| Petitioner, | **ORDER TO SHOW CAUSE RE DISMISSAL OF PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY AS TIME-BARRED** |
| v. | |
| M.D. MCDONALD, WARDEN, | |
| Respondent. | |

## I. BACKGROUND

Before the Court is a Petition for Writ of Habeas Corpus ("Petition") brought by Damond Jackson ("Petitioner"), a state prisoner proceeding *pro se*. The Petition[1] is brought pursuant to 28 U.S.C. § 2254 and it raises three claims[2] directed at

---

[1]   The pending Petition, including the attached memorandum and exhibit, is 18 pages in length. (Dkt. #1.) The pages of these documents are not consecutively numbered from the first page in violation of the pagination requirements of Local Rule 11-3.3. For convenience and clarity, this Order to Show Cause ("OSC") shall cite to the pages of Petitioner's foregoing papers by referring to the electronic pagination supplied by the Court's CM/ECF official electronic document filing system.

[2]   Petitioner ostensibly raises one claim for relief. (Pet. at 5, ¶ 7(a).) However, a closer review of the Petition and accompanying documents establishes the
(continued...)

1  Petitioner's 1998 conviction and sentence of 43 years to life that he sustained
2  following a jury trial in the California Superior Court for Los Angeles County (case
3  no. TA048525). For the reasons set forth below, Petitioner is ordered to show cause
4  why his Petition should not be dismissed with prejudice because it is time-barred.

5

6  **II. DISCUSSION**

7  **A.    Standard of Review**

8  Rule 4 of the Rules Governing Section 2254 Cases in the United States District
9  Courts, 28 U.S.C. foll. § 2254, requires a judge to "promptly examine" a habeas
10  petition and "[i]f it plainly appears from the petition and any attached exhibits that the
11  petitioner is not entitled to relief in the district court, the judge must dismiss the
12  petition and direct the clerk to notify the petitioner." Local Rule 72-3.2 of this Court
13  also provides "[t]he Magistrate Judge promptly shall examine a petition for writ of
14  habeas corpus, and if it plainly appears from the face of the petition and any exhibits
15  annexed to it that the petitioner is not entitled to relief, the Magistrate Judge may
16  prepare a proposed order for summary dismissal and submit it and a proposed
17  judgment to the District Judge." C.D. Cal. R. 72-3.2. Further, an untimely habeas
18  petition may be dismissed *sua sponte*, however, the district court must give the
19  petitioner adequate notice and an opportunity to respond before doing so. *Day v.*
20  *McDonough*, 547 U.S. 198, 209-10, 126 S. Ct. 1675 (2006); *Herbst v. Cook*, 260 F.3d
21  1039, 1043 (9th Cir. 2001).

22  **B.    Statute of Limitations**

23  The Petition is governed by the Antiterrorism and Effective Death Penalty Act
24  of 1996 ("AEDPA"), which establishes a one-year statute of limitations for state
25  prisoners to file a habeas petition in federal court, because the Petition was filed after

26

27  [2]/   (...continued)
28  Petition actually raises three distinct claims. (*Id.* at 2-4, 14-15.)

April 24, 1996, AEDPA's enactment date.  28 U.S.C. § 2244(d)(1); *see Lindh v. Murphy*, 521 U.S. 320, 327-37, 117 S. Ct. 2059 (1997).  In most cases, the limitations period begins to run from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

The face of the Petition, accompanying memorandum, exhibits, and relevant state court records[3] show Petitioner sustained his underlying conviction on January 27, 1998, and sentence on May 30, 1998. (Pet. at 2.)  The relevant state court records also establish that the California Supreme Court (case no. S083959) denied his petition for review on January 19, 2000, and that Petitioner never filed a petition for certiorari with the United States Supreme Court.  (Official records of California courts.)  Therefore, for purposes of AEDPA's limitations period, Petitioner's judgment became final on April 18, 2000, the ninetieth day after the state high court denied his petition for review and the last date for him to file a petition for certiorari with the United States Supreme Court.  *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).  The statute of limitations then started to run the next day, April 19, 2000, and ended a year later on April 18, 2001. 28 U.S.C. § 2244(d)(1)(A); *see also Patterson v. Stewart*, 251 F.3d 1243, 1245-47 (9th Cir. 2001) (the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)).  Petitioner did not sign, date, and constructively file his pending Petition in this matter until September 17, 2009[4] -- 3,074 days (over 8 years) after the expiration of the limitations period.

---

[3]   The Court takes judicial notice of Petitioner's records in the state appellate courts, which are available on the Internet at http://appellatecases.courtinfo.ca.gov. *See Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002) (federal courts may take judicial notice of relevant state court records in federal habeas proceedings).

[4]   Pursuant to the "mailbox rule," a *pro se* prisoner's habeas petition is deemed to be filed on the date the prisoner delivers the petition to prison authorities
(continued...)

1   Accordingly, absent some basis for tolling or an alternative start date to
2   AEDPA's limitations period under 28 U.S.C. § 2244(d)(1), the pending Petition is
3   time-barred.

4   **C.    Statutory Tolling**

5   AEDPA provides a statutory tolling provision that suspends the limitations
6   period for the time during which a "properly-filed" application for post-conviction or
7   other collateral review is "pending" in state court.  28 U.S.C. § 2244(d)(2); *Waldrip*
8   *v. Hall*, 548 F.3d 729, 734 (9th Cir. 2008); *Bonner v. Carey*, 425 F.3d 1145, 1148 (9th
9   Cir. 2005).  An application is "pending" until it has achieved final resolution through
10  the state's post-conviction procedures.  *Carey v. Saffold*, 536 U.S. 214, 220, 122 S. Ct.
11  2134 (2002).  The limitations period is not tolled between the time a final decision is
12  issued on direct state appeal and the time a state collateral challenge is filed because
13  there is no case "pending" during that interval.  *Thorson v. Palmer*, 479 F.3d 643, 646
14  (9th Cir. 2007); *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999).  On collateral
15  review, however, "intervals between a lower court decision and a filing of a new
16  petition in a higher court," when reasonable, fall "within the scope of the statutory
17  word 'pending'" thus tolling the limitations period.  *Saffold*, 536 U.S. at 221, 223;
18  *Evans v. Chavis*, 546 U.S. 189, 192, 126 S. Ct. 846 (2006) (*citing Saffold*).

19  On April 16, 2001 -- 362 days after the one-year limitations period started to run
20  on April 19, 2000 -- Petitioner constructively filed his first state habeas petition with

21

22

23   [4/]   (...continued)
24  for mailing to the clerk.  *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S. Ct. 2379
    (1988); *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001).  The mailbox rule also
25  applies to *pro se* state habeas petitions.  *Stillman v. Lamarque*, 319 F.3d 1199, 1201
26  (9th Cir. 2003).  The pending Petition was filed by the Clerk on September 24, 2009,
    however, for purposes of the timeliness analysis, the Court gives Petitioner the benefit
27  of the doubt by assuming he constructively filed the Petition on September 17, 2009,
28  the date he signed the Petition and his accompanying proof of service.  (Pet. at 8, 18.)

1   the trial court (case no. TA048525),[5/] leaving 3 days remaining before the limitations
2   period expired.  Under AEDPA, Petitioner is not entitled to statutory tolling for this
3   362-day period because there was no case "pending" during this interval.  *See*
4   *Thorson*, 479 F.3d at 646; *Nino*, 183 F.3d at 1006.

5   Petitioner is entitled to "one full round" of statutory tolling from April 16, 2001,
6   to July 15, 2009, the 3,012-day period during which his three state habeas petitions
7   were pending and later denied in the state courts.  (*See* case no. TA048525, B212230,
8   S170542).  28 U.S.C. § 2244(d)(2); *Bonner*, 425 F.3d at 1148; *Saffold*, 536 U.S. at
9   220-22 (holding that in the absence of undue delay, a petitioner in California is
10  normally entitled to "one full round" of collateral review in state court "free of federal
11  interference"); *see also Welch v. Carey*, 350 F.3d 1079, 1082 (9th Cir. 2003);
12  *Delhomme v. Ramirez*, 340 F.3d 817, 819 (9th Cir. 2003).  Given 3,012 days of
13  statutory tolling, the statutory limitations period was extended from April 18, 2001,
14  to July 17, 2009.

15  Therefore, the instant Petition is untimely by 62 days (the amount of untolled
16  time between the extended limitations deadline (7/17/09) and the Petition's
17  constructive filing date (09/17/09).)

18  **D.    Alternative Start of the Statute of Limitations**

19  **1.    State-Created Impediment**

20  In rare instances, AEDPA provides that its one-year limitations period shall run
21  from "the date on which the impediment to filing an application created by State action
22  in violation of the Constitution or laws of the United States is removed, if the

23  _____

24      [5/]    State court appellate records obtained directly from the clerk of the
        California Superior Court for Los Angeles County establish April 16, 2001, as the date
25      Petitioner signed his first state habeas petition, April 23, 2001, as the date it was
26      received by the clerk of the superior court for filing, and July 21, 2001, as the date the
        petition was actually filed, a copy of which is attached to this OSC as Exhibit 1.  The
27      record also shows that more than seven years after it was filed, the superior court
28      denied the petition on September 12, 2008.

applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Asserting that the statute of limitations was delayed by a state-created impediment requires a showing of a due process violation. *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). Thus, a claim of delayed accrual under this provision "must satisfy a far higher bar than that for equitable tolling." *Ramirez v. Yates*, 571 F.3d 993, 1000 (9th Cir. 2009). Petitioner's filings do not set forth any facts that show he is entitled to relief under this provision.

### 2. Newly Recognized Constitutional Right

AEDPA provides that, if a claim is based upon a constitutional right that is newly recognized and applied retroactively to habeas cases by the United States Supreme Court, the one-year limitations period begins to run on the date which the new right was initially recognized by the United States Supreme Court. 28 U.S.C. § 2244(d)(1)(C). Petitioner's filings do not set forth any facts that show he is entitled to relief under this provision.

### 3. Discovery of Factual Predicate

AEDPA also provides that, in certain cases, its one-year limitations period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *see also Hasan v. Galaza*, 254 F.3d 1150, 1155 (9th Cir. 2001). Petitioner's filings do not set forth any facts that show he is entitled to relief based upon a late discovery of the factual predicate.

### E. Equitable Tolling

The United States Supreme Court has not yet decided whether AEDPA's limitations period allows for equitable tolling but it has assumed without deciding that it is available where the parties have agreed. *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079, 1085 (2007) ("We have not yet decided whether § 2244(d) allows for equitable tolling."); *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005) ("We have never squarely addressed the question whether equitable tolling is

1  applicable to AEDPA's statute of limitations").

2      Although the Ninth Circuit has found equitable tolling is available, *Harris v.*

3  *Carter*, 515 F.3d 1051, 1054 n.4. (9th Cir. 2008), it has cautioned "[e]quitable tolling

4  is justified in few cases," and that "the threshold necessary to trigger equitable tolling

5  [under AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn v. Moore*,

6  345 F.3d 796, 799 (9th Cir. 2003); *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.

7  2002) (same). "This high bar is necessary to effectuate the 'AEDPA's statutory

8  purpose of encouraging prompt filings in federal court in order to protect the federal

9  system from being forced to hear stale claims.'" *Mendoza v. Carey*, 449 F.3d 1065,

10  1068 (9th Cir. 2006). "Equitable tolling determinations are 'highly fact-dependent.'"

11  *Id.* The petitioner "bears the burden of showing that equitable tolling is appropriate."

12  *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).

13      Moreover, in *Pace*, the Supreme Court clearly established that "a litigant

14  seeking equitable tolling bears the burden of establishing two elements: (1) that he

15  has been pursuing his rights diligently, and (2) that some extraordinary circumstance

16  stood in his way." *Pace*, 544 U.S. at 418; *Lawrence*, 549 U.S. at 336. *Pace*'s

17  diligence prong requires the petitioner to show he engaged in reasonably diligent

18  efforts to file his § 2254 petition throughout the time the limitations period was

19  running. *Mendoza*, 449 F.3d at 1071 n.6 (stating that equitable tolling "requires both

20  the presence of an extraordinary circumstance and the inmate's exercise of diligence").

21  The petitioner must also demonstrate that he exercised reasonable diligence in

22  attempting to file his habeas petition after the extraordinary circumstances began

23  otherwise the "link of causation between the extraordinary circumstances and the

24  failure to file [is] broken." *Spitsyn*, 345 F.3d at 802. *Pace*'s "extraordinary

25  circumstances" prong requires the petitioner to "additionally show that the

26  extraordinary circumstances were the cause of his untimeliness, and that the

27  extraordinary circumstances made it impossible to file a petition on time." *Ramirez*,

28  571 F.3d at 997 (internal quotations and citations omitted). Petitioner's filings do not

1    set forth any facts that show he is entitled to equitable tolling.

2

# O R D E R

3      Based on the foregoing, the Court finds the Petition is untimely. Accordingly,

4 Petitioner shall have until **November 13, 2009**, to file a written response and show

5 cause why his Petition should not be dismissed with prejudice because it is time-

6 barred. In responding to this Order, Petitioner must show by declaration and any

7 exhibits what, if any, factual or legal basis he has for claiming that the Court's

8 foregoing analysis is factually or legally incorrect, or that AEDPA's one-year statute

9 of limitations should be tolled, or the start date extended. If Petitioner contends he is

10 entitled to tolling because of a lack of access to the prison law library due to a

11 lockdown or another state-created impediment, his written response must be supported

12 by a declaration from the warden or prison librarian verifying the law library and

13 library materials were unavailable throughout the relevant time period because of the

14 lockdown or other stated reason. Further, Petitioner must show that, during the time

15 that access to the prison law library was allegedly unavailable, he made requests for

16 legal materials to be brought to his cell and those requests were denied.

17      **Petitioner is warned that if a timely response to this Order is not made,**

18 **Petitioner will waive his right to do so and the Court will, without further notice,**

19 **issue an order dismissing the Petition, with prejudice, as time-barred. Further,**

20 **if Petitioner determines the Court's above analysis is correct and the Petition is**

21 **clearly time-barred, he should file a Request For Voluntary Dismissal of this**

22 **action pursuant to Fed. R. Civ. P. 41(a)(1) in lieu of a response to this Order.**

23

24      IT IS SO ORDERED.

25 DATED: October 14, 2009

26

27                       ARTHUR NAKAZATO
                    UNITED STATES MAGISTRATE JUDGE

28

Name DAMOND JACKSON

Address CALIFORNIA STATE PRISON-LOS ANGELES COUNTY

44750 60TH STREET WEST

LANCASTER, CA 93536-7620

CDC or ID Number J-09348

**FILED**
**LOS ANGELES SUPERIOR COURT**

JUL 1 2 2001   RECEIVED

JOHN A. CLARKE, CLERK   APR 2 3 2001

BY ALISSA LeCRONE, DEPUTY   SUPERIOR COURT

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

_____
(Court)

| | |
|---|---|
| DAMOND JACKSON <br><br> Petitioner <br> vs. <br><br> E. ROE, WARDEN <br><br> Respondent | **PETITION FOR WRIT OF HABEAS CORPUS** <br><br> No. _TA048525-03_ <br> *(To be supplied by the Clerk of the Court)* <br><br> SUP.CT.NO. TA048525 <br> APPEAL NO. B120763 <br> CAL.SUP.CT.NO. S083959 |

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page one of six
Penal Code, § 1473 et seq.
Cal. Rules of Court, rules 56.5, 201 et seq.

# EXHIBIT 1

[X] A conviction

[ ] Parole

[ ] A sentence

[ ] Credits

[ ] Jail or prison conditions

[ ] Prison discipline

[ ] Other (specify): _____

1. Your name: DAMOND JACKSON

2. Where are you incarcerated? CALIFORNIA STATE PRISON-LOS ANGELES COUNTY

3. Why are you in custody? [X] Criminal Conviction   [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

See paragraph II of the attached Petition for Writ of Habeas Corpus, which is incorporated herein by this reference.

b. Penal or other code sections: P.C. 211, 12022.5(a)(1) in count 1, PC. 459, 12022.5 (a) in count 2, P.C. 245(a)(1), 12022.5(a)(1) count 3 P.C. 12021(a)(1)-4

c. Name and location of sentencing or committing court: Superior Court of California, County of Los Angeles

d. Case number: TA048525

e. Date convicted or committed: January 27, 1998

f. Date sentenced: March 10, 1998

g. Length of sentence: 44 years to life

h. When do you expect to be released? unknown

i. Were you represented by counsel in the trial court? [X] Yes.   [ ] No.   If yes, state the attorney's name and address:

Bella Dillworth, Public Defender, 200 West Compton Blvd., 8th Floor, Compton, CA 90220

4. What was the LAST plea you entered? *(check one)*

[X] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

[X] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page two of six

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The Grounds for relief are listed in the attached Petition for
writ of habeas corpus in paragraphs IV (A)-(D).

a.  **Supporting facts:**
    Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

The Supporting Facts, supporting cases, rules and/or other authorities
are listed in the attached Petition for writ of habeas corpus in
paragraphs V-VIII.

b.  **Supporting cases, rules, or other authority (optional):**
    *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

a. Name of court ("Court of A___" or "Appellate Dept of Superior Court"):

Court of Appeal, Second Appellate District, Division Two

b. Result: conviction affirmed    c. Date of decision: 10/27/99

d. Case number or citation of opinion, if known: B120763

e. Issues raised: ( _____

(2) See paragraph IX of the attached Petition for Writ of Habeas Corpus

(3) _____

f. Were you represented by counsel on appeal?  [X] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

Daniel G. Koryn; 9454 Wilshire Blvd., 600; Beverly Hills, CA 90212

9. Did you seek review in the California Supreme Court?  [X] Yes.  [ ] No.  If yes, give the following information:

a. Result: Petition for Review denied    b. Date of decision: 1/19/00

c. Case number or citation of opinion, if known: S083959

d. Issues raised:  (1) See paragraph X of the attached Habeas Corpus Petition.

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

Petitioner is a layman at law, and after receiving all of the records from appointed counsel, Petitioner diligently sought relief prayed for in the instant proceeding.

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

Not an administrative claim

b. Did you seek the highest level of administrative review available?  [ ] Yes.  [ ] No.
*Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]

commitment, or issue in any co[...] Yes. If yes, continue with number 13. No. If no, skip to number 15.

13. a. (1) Name of court: _____ n/a

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____ n/a

    (3) Issues raised: (a) _____ n/a

            (b) _____ ◆

    (4) Result (Attach order or explain why unavailable): _____ n/a

    (5) Date of decision: _____ n/a

  b. (1) Name of court: _____ n/a

    (2) Nature of proceeding: _____ n/a

    (3) Issues raised: (a) _____ n/a

            (b) _____ n/a

    (4) Result (Attach order or explain why unavailable): _____ n/a

    (5) Date of decision: _____ n/a

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____ n/a

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

Petitioner is limited by the law library at this particular facility. Once Petitioner received the records from appointed counsel, he diligently sought relief prayed for in this proceeding.

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

This court has original jurisdiction

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: April 16, 2001

▶ Mr. Hammond Jackson
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page six of six

IN THE SUPERIOR COURT OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

In re: DAMOND JACKSON             )        Super. Ct. No. TA048525
                                  )        Appeal No. B120763
On Habeas Corpus                  )        Cal.Sup.Ct.No. S083959

PETITION FOR WRIT OF HABEAS CORPUS

DAMOND JACKSON
CSP-LAC/J-09348
44750 60th Street West
Lancaster,CA 93536-7620

Petitioner In Propria Persona

IN THE SUPERIOR COURT OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

In re: DAMOND JACKSON )    Super.Ct. No. TA048525
                        )    Appeal No. B120763
On Habeas Corpus _____ )    Cal.Sup.Ct.No. S083959

PETITION FOR WRIT OF HABEAS CORPUS

TO THE HONORABLE JOHN J. CHEROSKE, JUDGE PRESIDING

OF THE SUPERIOR COURT OF LOS ANGELES COUNTY

Petitioner, Damond Jackson, In Propria Persona, and by this verified petition alleges as follows:

I.    Petitioner is unlawfully held in custody by the California Department of Corrections of California State Prison-Los Angeles County.

II.   Petitioner was convicted of home invasion robbery with personal use of a firearm and infliction of great bodily injury, first degree residential burglary with personal use of a firearm and infliction of great bodily injury, assault with a semiautomatic firearm with personal use of a firearm and infliction of great bodily injury, and possession of a firearm by an ex-felon. Following a bifurcated trial, the jury found true the allegaions that appellant had suffered one prior serious felon conviction, and two prior "strike" convictions.

-1-

III.    The court sentenced appellant to 44 years to life, consisting of a term of 25 years to life on the home invasion robbery, plus 10 years for the use allegation, 3 years for the breat bodily injury allegation, 5 years for the serious felon, and 1 year for the prior prison term.

IV.    Petitioner's judgment of conviction has been unlawfully and unconstitutionally imposed in violation of his federal constitutional rights as guaranteed by the Sixth and Fourteenth Amendments, and his state constitutional rights as guaranteed by Article I, section 15 of the California Constitution, because the trial court and the state appellate court used the wrong legal standard in determining petitioner's claim of a Batson v. Kentucky  476 U.S. 79 (1986) violation, and that Petitioner's trial counsel was ineffective for failing to make an adequate record and for failing to use a comparative analysis in making a claim of the prosecution's race-based peremptory challenges, as specifically set forth below:

A.    The trial court's reliance upon the "strong likelihood" standard of People v. Wheeler (1978) 22 Cal.3d 258 fails to adequately protect petitioner's federal constitutional right to a fair trial as defined by Batson v. Kentucky 476 U.S. 79 (1986).

B.    The state appellate court's comparative analysis of the jurors who remained and the jurors dismissed was an unreasonable examination of the facts for a given explanation equally applicable to a juror of a different race who was not stricken by the exercise of a peremptory challenge by the prosecution.

-2-

C.     The appellate court's reliance upon the "strong likelihood" standard of <u>People v. Wheeler</u> (1978) 22 Cal.3d 258 fails to adequately protect petitioner's federal constitutional right to a fair trial as defined by <u>Batson v. Kentucky</u>  476 U.S. 79 (1986).

D.     Petitioner's trial counsel failed, under the standard set forth in <u>Batson v. Kentucky</u> 476 U.S. 79 (1986) to establish a prima facie case that the facts and circumstances of the case raise an inference that the prosecution has excluded venire members from the petit jury on account of their race.

V.     During the stage of the peremptory challenges, the prosecutor used a total of two challenges.  Both challenges were exercised against two African-Americans. (Reporter's Transcripts, RT hereinafter, 120, 147)  Co-defendant's attorney objected pursuant to <u>People v. Wheeler</u> (1978) 22 Cal.3d 258 (RT 147) Counsel gave no other basis for the motion. (RT 147-148)  Appellant's counsel joined in the motion. (RT 148)

Without asking the prosecutor to justify his challenges, the judge denied the motion, stating, "The court finds that you have failed to make a prima facie case.  There's a presumption that the exercise of peremptories are constitutionally correct. You have the burden of showing that there is a strong likelihood that they are discriminatory in nature.  You haven't done that. So it's denied." (RT 148)

-3-

To establish a prima facie case, the defendant must show that "he is a member of a cognizable racial group", Batson 476 U.S. at 96, and that "the facts and circumstances of the case 'raise an inference' tht the prosecution has excluded venire members from the petit jury on account of their race." Wade v. Terhune  202 F.3d 1190, 1195 (9th Cir. 2000)

Normally of a petition for a writ of habeas corpus, the federal court will review the state trial court's fact-specific determination of whether a defendant has made a prima facie case of a Batson violation deferentially, with the Anti-Terrorism and Effective Death Penalty Act of 1996's "statutory presumption of correctness" Tolbert v. Page  182 F.3d 677, 685 (9th Cir. 1999).  The state reviewing courts also give "considerable deference" upon the trial court's personal observations and rulings.  People v. Howard (1992) 1 Cal.4th 1132, 1155.  However, where the state trial court uses the wrong legal standard, this rule of deference dose not apply in the federal courts.  See, United States v. Bishop  959 F.2d 820, 827 (9th Cir. 1992).  Thus, reviewing courts of petitions for writ of habeas corpus are compelled to reach the question of whether the state trial court erred as a matter of law in applying Wheeler.

Since both the trial court and the appellate court heavyly relied upon People v. Wheeler's "strong likelihood" standard, and the federal court has determined that such is inadequate in protecting a defendant's right to a fair trial, the aforementined

-4-

findnigs must be rejected, and petitioner should be intitled to a full and fair hearing in the state court regarding his claim of denial of a fair trial in the state court.

VI.    Without a full and fair hearing in the state court, reviewing courts cannot determine whether or not the prosecutor hs used race-neutral reasons for exclusion of members of a cognizable racial group.

In the instant matter, the reviewing court did actually compare the sitting jury with the dismissed jurors.  The state appellate court found:

> "Prospective juror Ms. Meadows, a single woman who owned a .357 handgun and referred to having perviously served as a juror in an "S&L scandal" case, was late for the subsequent jury selection session.  The People argue Meadows' lateness and her reference to the "S&L scandal" may have suggested to the district attorney a lack of respect for the dignity of the court or the court system, a recognized "race-neutral" justification for exercise of a peremptory challenge. (See People v. Barber (1988) 200 Cal.App.3d 378, 396.)  As to the second excused potential juror, Mrs. Coleman, the People point out she was a victim of two unsolved car stereo thefts with no prior jury experience, who had exhibited a reluctance to serve as a juror, claiming that she attended school in the evenings on Mondays and had to be out of court by 4:00 p.m.  Further, Mrs. Coleman's husband, who "patrolled a school" in Compton, kept guns in their home and, prior to their marriage, had been arrested for discharging a firearm in a residential area.  The People cite to aurhorities finding that reluctance to serve as a juror and negative experiences with law enforcement constitute "race-neutral" justifications for exercise

-5-

> of peremptory challenges.  (See, e.g., <u>People</u>
> <u>v. Walker</u>  (1998) 64 Cal.App.4th 1062, 1070
> ((reluctance to serve)); <u>People v. Turner</u>
> (1994) 8 Cal.4th 137, 171 ((negative law
> enforcement experience)).
>      Defendants challenge these characterizations,
> but the record, as summarized above, reflects
> ample grounds on which the prosecutor might
> reasonably have challenged these two jurors.
> Even if the burden had been shifted to the
> People to provide a race-neutral explanation,
> that explanation "need not be sufficient
> to justify a challenge for cause. (Citations.)
> Jurors may be excused based on 'hunches'
> and even 'arbitrary' exclusion is permissible,
> so long as the reasons are not based on
> impermissible group bias.  (Citation)  There
> is a presumption that a prosecutor uses
> his or her peremptory challenges in a cnostitutional
> manner.  <u>People v. Turner</u> supra 8 Cal.4th
> at 165.
>      Review of the entire record reveals that
> the trial court did not abuse its discretion
> in determining that defendants' <u>Wheeler</u>
> motion failed to demonstrate a prima facie
> case of discrimination."   (Unpublished
> Opinion at page 8-9)

Petitioner submits Exhibit A, which was included in the opening

brief filed by his appellate counsel.  This shows that juror

YN's background to be almost identical to excused juror Mrs.

Coleman.  Both were single.  Both had no jury experience.  Both

had been victims of crimes.  Both had close relatives involved

in crimes, juror YN's brother, and Mrs. Coleman's husband.  The

same can be deduced from the record regarding juror BL, where

BL had no jury experience, had previously owned guns, and had

been the victim of two vehicle thefts.  Juror DR had actually

been arrested before, and he owned guns. Juror AP  was a victim

of a crime, in that her brother had been murdered.

To establish a prima facie case, the defendant must show that 'he is a member of a cognizable racial group', <u>Batson</u> at 476 U.S. 96, and that 'the facts and circumstances of the case **'raise an inference'** that the prosecution has excluded venire members from the petit jury on account of their race. <u>Wade v. Terhune</u>  202 F.3d 1190, 1195 (9th Cir. 2000)  The standard used by the trial court and the appellate court (strong likeilhood) in <u>Wheeler</u> and its progeny has been declared inadequate by the <u>Wade</u> court.  Review of a trial court's <u>Batson</u> prima facie determination is deferential.  <u>Tolbert v. Page</u>  182, F.3d 677, 684 (9th Cir. 1999)

A neutral explanation for reviewing courts for the race-neurtal reasons for exclusion of venire members from the petit jury means an explanation based on something other than race of the juror.  <u>Hernandez v. New York</u> 500 U.S. 352, 360.  The state appellate court's reasons for the exercise of peremptory challenges against prospective jurors Ms. Meadows and Mrs. Coleman were reluctance to serve and negative law enforcement experience. A prosecutor's motives may be revealed as pretextual where a given explanation is equally applicable to a juror of a different race who was not stricken by the exercise of a peremptory challenge. See <u>Caldwell v. Maloney</u> 159 F.3d 639, 651 (1st Cir. 1998)  A comparative analysis of jurors struck and those remaining is a well-established tool for exploring the possibility that facially race-neutral reasons are a pretext for discrimination.  See <u>Turner v. Marshall</u> 121 F.3d 1248, 1251 (9th Cir. 1997)  Peremptory challenges cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable

characteristices are also challenged.  See Id.

In addition, the persuasiveness of the prosecutor's just-ifications for exercising peremptory strikes is relevant.  See Purkett v. Elem 514 U.S. 765, 768 (1995)(per curiam).  "Implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. Id.  Where the facts in the record are objectively contrary to the prosector's statements, serious questions about the legitimancy of a prosecutor's reasons for exercising peremptory challenges are raised.  See Caldwell 159 F.3d at 651. (stating that serious questions of pretext are raised where the facts in the record are simply objectively contrary to the prosecutor's statements); Johnson v. Vasquez 3 F.3d 1327, 1331 (9th Cir. 1993)(stating that courts are not bound to accept neutral reasons that are either unsupported by the record or refuted by it.)  The fact that one or more of a prosecutor's justificatios do not hold up under judicial scrutiny militates against the sufficiency of a valid reason. See United States v. Chinchilla 874 F.2d 695, 699 (9th Cir. 1989)(stating that, although reasons given by prosecutor "would normally be adequately 'neutral' explanations taken at face value, the fact that two fo the four proffered reasons do not hold up under judicial scrutiny militates against their sufficiency").

Under the circumstances of the instant case, the state appellate court arrived to conclusionary findings regarding Ms. Meadow's reluctance to serve as a juror.  The fact that she was late arriving to court, and a reluctance to serve as

-9-

a jurorist is speculative   A full and fair hearing is required by the fact finding court is required in order to resolve this matter so that it may stand judicial scrutiny.

Nothing in exhibit A, attached hereto  can provide the state appellate court or the prosecutor race-neutral reasons for the exclusion of Ms. Meadows or Mrs. Coleman.  A complete review of the record dose not provide reviewing courts with a legitimate reason to support the findings by either the trial court of petitioner, or the appellate court's conclusion that petitioner received a fair trial.  Thus, the state appellate court used an unreasonable determination of the facts, in light of its use of a wrong legal standard.

VII. Petitioner's trial counsel was ineffective for failing to make an adequate record or using a comparative analysis under the rationale of Batson.

First, trial counsel failed to make an objection, using the federal standard under the progeny of the standards outlined in Batson.  Defendant raising Batson claim must establish prima facie case that: defendant is member of cognizable racial group; prosecution has removed members of such racial group; and circumstances raise inference that challenges were motivated by race.  Turner v. Marshall 63 F.3d 807 (9th Cir. 1995)  Under Batson, burden shifts to challenging party to demonstrate race-neutral explanation for peremptory strike only upon establishment of prima facie case of purposeful discrimination.  United States v. Ponce  51 F.3d 820 (9th Cir. 1995)

If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court.

Party seeking to establish prima facie case of discrimination in opponent's exercise of peremptory challenges must first make as complete a record of the circumstances as is feasible; second he must establish that persons excluded are members of a cognizable group ; third, from all the circumstances of the case he must show a strong likeilhood that such persons are being challenged becuase of their group association. (please note that the third step has been ruled unconstitutional by the Wade court). People v. Welch (1999) 20 Cal.4th 701; Williams v. California (1997) 16 Cal.4th 635; People v. Mayfield (1997) 14 Cal.4th 668; People v. Buckley (1997) 53 Cal.App.4th 658 (Defendant should under-score other relevant circumstances such as prospective jurors' characteristics, nature of prosecutor's voir dire, or prospective jurors' answers to questions.); People v. Perez (1996) 48 Cal.App.4th 1310; (The aforementioned citation show that trial counsel make as complete a record of the circumstances as is feasible)

Thus, in the instant matter, not only did trial counsel fail to make a federally sound objection, trial counsel further failed to do the work adequately to **preserve** a full and fair review by reviewing courts. Strickland v. Washington 466 U.S. 668, 688-694.

VIII.    The claim herein is both clear and fundamental,
in that the trial court and the state appellate court used the
wrong legal standard in determining whether or not petitioner
received a fair trial.  The claim of ineffective assistance of
counsel also meets the aforemention criterion, and therefore
are properly subject to further judicial review by post-appeal
habeas corpus, even though not raised at trial or appeal.
In re Harris  (1993) 5 Cal.4th 813, 834.

IX.    Petitioner's direct appeal was denied on October
27, 1999 by the Court of Appeal, Second Appellate District,
Division Two.  The grounds raised therein were; (1) Appellant's
Federal and State Due Process rights to a fair trial and right
to counsel, were violated when the court disparaged defense
counsel for making faces to the court; (2)  Appellant's conviction
in count 4 for violation of penal code section 12021 must be
reversed because appellant did not personally waive his requisite
constitutional rights prior to his attorney's stipulating to
is ex-felon status; (3) The trial court erred when it imposed
a concurrent 44-year-to-life term for the burglary conviction
in count 2 because the sentence on this conviction should have
been stayed pursuant to penal code section 654; (4) The one-
year sentence hehancement pursuant to penal code section 667.5,
(B) should be stricken because the prosecutor did not proceed
to trial on this enhancement, the jury was never instructed
on the element of the enhancement, and the jury never found

-11-

the enhancement true; and (5) Appellant joins in all issues raised by co-appellant that may accrue to his benefit.

X.    The state appellate court concluded that the trial court erred in imposing concurrent terms for robbery and burglary rather than staying one of the sentences under penal code section 654.  The Court also concluded that the trial court erred in imposing upon defendant/appellant a one-year sentence enhancement under section 667.5(b), in the absence of a jury finding that the enhancement allegations were true.  In all other respects the conviction was affirmed.

XI.    Petitioner's Petition for Review was denied by the California Supreme Court on January 19, 2000.  The grounds raised therein were (1) review should be granted because defendant was not advised of nor did he waive his constitutioinal rights prior to his attorney stipulation to his prior conviction; and (2) Review should be granted because the trial court erred in denying defendant's Wheeler  motion because defendant was deprived of a representative jury by a discriminatory useof the peremptory challenges.

XII.    Under Article 6, section 10 of the California Constituion, this court has original jurisdiction over a petition for writ of habeas corpus.  Petitioner has filed this petition in this Court because the factual allegations made herein are most appropriately for this Court's judicial powers to fully and fairly develope and/or determine.

XIII.      Petitioner has no adequate remedy at law.

WHEREFORE, petitioner requests that this Court:

1.      Take judical notice of all records in the matter of <u>People v. Jackson</u>  Super.Ct.No. TA043525/Appeal No. B120763/ Cal.Sup.Ct.No. S083959.

2.      Issue an order to show cause, returnable before this Court, why petitioner's conviction should not be set aside.

3.      That this Court determine whether or not the pro-secutor inappropriately used its peremptory challenges to exclude venire members from the petit jury on account of their race by using the correct legal standard, not the standard overrule by the <u>Wade</u> Court.

4.      That upon final review, order that Petitioner's conviction be set aside due to the prosecutor's unlawful use of peremptory challenges.

5.      That this Court find that Petitioner's  trial counsel was ineffective for failing to use the appropriate federal standard to preserve his constitutional right to a fair trial.

6.      That this Court find that the standard of "strong likeilhood" as defined in <u>Wheeler</u>  be deem inadequate to protect Petitioner's right to a fair trial.

7.      Provide such other and further relief as may be deemed appropriate in the interest of justice.

Dated: April 16, 2001                    By:

*Damond Jackson*
Damond Jackson, Petitioner

-13-

VERIFICATION

STATE OF CALIFORNIA      )
                               ) ss.
COUNTY OF LOS ANGELES   )

    I, Damond **Jackson**, **declare** under penalty of perjury to the following facts:

    1.    I am the incarcerated, indigent, Propria Persona Petitioner in <u>People v. Jackson</u> Superior Court Number TA048525, Appeal Number B120763, California Supreme Court Number S083959.

    2.    I have read the foregoing Petition for Writ of Habeas Corpus, and declare under penalty of perjury under the laws of the Stae of California that the contents of this petition are true and correct to the best of my knowledge.

    Executed this 16th day of April, 2001 at Lancaster, California.


_____
Damond Jackson, Petitioner

EXHIBIT A

In this case, an objective examination of the record and a comparison of the individual voir dire of the stricken and seated jurors demonstrates that appellant established a prima facie case that the prosecutor was attempting to exclude African-Americans from the jury, thereby violating the requirement that the jury be drawn from a representative cross-section of the community, as well as the equal protection clause of the United States Constitution.

1.   <u>Prosecutor's Peremptory Strikes</u>

**Ms. Meadows (DA strike at ART 147.)**  As with most prospective jurors, voir dire of Ms. Meadows was not particularly extensive.  Meadows stated that she worked as an electrician for Boeing Aircraft, that she lived in Carson, and that she was single with two children.  (ART 104-105.) Neither she nor anyone close to her had ever been arrested, nor been the victim of a crime.  (ART 90-96, 84, 88.)  She had no bad experiences with the police, did not know anyone in the legal system or law enforcement, and she had no legal training.  (ART 70, 64, 65-69, 71.)  Meadows had previously served on two juries, and verdicts were reached in both.  (ART 104.)  Lastly, she knew of nothing that would prevent her from being fair and impartial.  (ART 61, 101.)

**Mrs. Coleman (DA strike at ART 120.)**  During jury voir dire,

exclusion of other blacks.  (44 Cal.3d at pp. 225-226.)

-1-

prospective juror Mrs. Coleman introduced herself to the court and attorneys. She resided in Long Beach with her husband and two small children. She was a teacher in the Compton school district and her husband patrolled a school in Lynwood. (ART 110-112.) Her husband previously had worked as an armed security guard. (ART 98.) She had been the victim of a crime, as her car radio had been stolen twice. (ART 71.) And prior to their marriage, her husband had been arrested for discharging a firearm in a residential area. (ART 92.) Nevertheless, she stated that would not interfere with her job as a juror. (Id.)

2.      Seated Jurors.[13]

YN-- This juror was a resident of Pico Rivera, was single, and had no children. The juror worked as an account representative at Ford Motor Credit, and had never served on a jury. (ART 105.) The juror had a friend who was a police officer but stated that she could nevertheless be fair to the defendants. (ART 69-70.) The juror had been the victim of two crimes: a car theft and a residential burglary. (ART 87.) Additionally, someone close to her had been convicted of a crime-- her brother had gotten a DUI.

---

[13] Since the jurors were referred to by seat numbers, the record became confusing. At one point, EK, a venire person was excused and it became unclear who took her seat. (See ART 126, and ART 150-151 suggesting her seat had been filled.) Then when new prospective jurors were called, two people called were not present and it became unclear whether one of them subsequently showed up. (See ART 150.) Therefore, appellant's counsel was only able to identify ten of the twelve seated jurors with

(ART 95.)

**BL--**  This juror was a resident of Bellflower, was single, had no

children, and was employed by an office furniture manufacturer as a shift

supervisor.  He had no prior jury experience.  (ART 106.)   He had

previously owned guns, but did not own any now.  (ART 99.)  And he had

been the victim of two vehicle thefts.  (ART 72.)

**DC--**  He resided in North Long Beach, was married, and had three

children.  (ART 106-107.)  Both he and his wife were retired from the

Naval Shipyard, and he now spent his time playing golf, hunting, and

fishing.  (ART 107.)  He was a gun owner and belonged to the Shooters of

America.  (ART 97.)  One of his sons was a cook, another was in an

institution suffering from schizophrenia, and the third was a student.  (ART

107.)

**AL--**  This Norwalk resident was single and had one child.  This

juror was employed by a food distributor, had never served on a jury, but

had been convicted of a DUI.  (ART 112, 90.)

**BS--**  Divorced and living in Los Angeles, this juror worked as an

office machine technician for the maintenance department of the Torrance

school district.  He had two children, one was an office technician and the

other was a student.  His ex-wife worked as a project specialist for Charles

---

certainty.

Drew University.  He had served on two juries, and verdicts were reached in both.  (ART 113.)

  **SH--**  A resident of Torrance and married to a homemaker, this juror was employed as an MTA technician.  He served on one prior jury in which a verdict was reached.  (ART 114.)  Although Korean was his first language, this juror had resided in this country for twenty years and had a full understanding of the English language.  (ART 62-63.)  This juror owned a gun for safety purposes.  (ART 98.)

  **RL--**  This resident of Cerritos, was a married man with two sons. He and his wife were both nurses and both of his sons were students.  He had no prior jury experience.  (ART 140-141.)

  **DR--**  This man lived in Torrance with his wife and five children. He was employed by Los Angeles county as a construction inspector, and his wife was a homemaker.  (ART 144.)  His children's occupations included:  fireman, picture framer, manager of a music store, warehouseman, and student.  (ART 144-145.)  He previously had been arrested for being under the influence of drugs.  (ART 135.)  He owned guns for target practice.  (ART 138.)  Lastly, he had served on two juries, only one of which reached a verdict.  (ART 145.)

  **AP--**  This juror resided in Lakewood, was divorced, and had two children.  She was employed by United Airlines as an internation filght

attendant.  She also ran a college preperatory program for girls.  Her ex-husband worked as a truck driver and both her children were students.  (ART 158.)  She served on three prior juries (1 civil and 2 criminal), and reached a verdict in one of the two criminal cases.  (Id.)  A friend of hers was a detective on the Compton Police Department.  (ART 153.)  Although her brother had been murdered, she felt this would not affect her ability to deliberate on this case.  (ART 155.)

DS-- A resident of Downey and married to a retired truck driver, this juror was employed by the Downey school district as an accounting clerk.  She had two grown children, one was a homemaker and the other a college student who worked part-time at Disneyland.  This juror had served as an alternate juror on a previous case, but had not deliberated.  (ART 159-160.)

The foregoing juror responses clearly demonstrate that none of the two African American venirepersons peremptorily challenged possessed any unique characteristics, backgrounds, education, employment, associations, or negative experiences with law enforcement which would have distinguished them from those jurors ultimately accepted to try the case.  In other words, the record does not present any reason for the prosecutor to want to exclude Ms. Meadows and Ms. Coleman other than group bias.  Because the primary difference between Meadows and

Coleman and the other jurors was their race, the reason for excluding them was in fact, based on race.

Since it is impossible to glean from this record any conceivable basis for the Meadows' and Coleman's exclusion other than racial consideration, Wheeler's "strong likelihood" test has been met.  Therefore, the trial court erred when it found that appellant had not made a prima facie case of improper use of peremptory challenges, and the prosecutor should have been required to state his reasons for challenging these prospective jurors. This denied appellant a fair trial before an impartial jury as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution.

C.    The Error Requires Outright Reversal of the Judgment.

The Batson-Wheeler error which occurred in this case must be deemed reversible per se in light of the fundamental rights involved. (People v. Fuentes, supra, 54 Cal.3d at 800.)  Appellant has found two cases in which, despite Batson-Wheeler error, appellate courts have rejected outright reversal as the appropriate remedy; instead opting for a limited remand to obtain more complete rulings from the trial court.  (See People v. Tapia, supra, 25 Cal.App.4th 984; and People v. Gore (1993) 18 Cal.App.4th 692.)  Both cases are distinguishable.

In both Tapia and Gore, the court's erroneous Batson-Wheeler ruling